JOHN G. RICHARD vs. THE NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY.

GEORGE L. WHITAKER ET AL. vs. THE NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY.

First Judicial District, Hartford, January Term, 1926.

WHEELER, C. J., CURTIS, KEELER, MALTBIE and HAINES, Js.

The rules that a verdict, based upon conflicting evidence, will be set aside when its manifest injustice is so plain and palpable as to justify the suspicion that the jury were influenced by prejudice,

corruption, or partiality, or when the indisputable, physical facts of the case demonstrate that the apparent conflict of the evidence is created by testimony which is untrue or mistaken, are but applications of the general principle that the conclusion of the jury cannot stand where it is one which they could not reasonably have reached upon the evidence before them.

That a verdict is against the great weight of the evidence, or that it represents a conclusion which the trial court would not have reached, are not grounds for setting it aside.

The decision of the trial court upon a motion to set aside a verdict is entitled to great weight and every presumption will be made in favor of its correctness.

The last-clear-chance doctrine applies where the following conditions co-exist: (1) the injured party must have already come into a position of peril; (2) the injuring party must then or thereafter have become aware, or should in the exercise of ordinary prudence have become aware, not only of the other's peril but also that the latter cannot, or will not, escape therefrom; (3) that the injuring party subsequently has the opportunity by the exercise of reasonable care to save the other from harm; and (4) that he fails to exercise such care. In such a situation, neither the conduct of the injured person in entering the zone of danger, nor his conduct in continuing there, can be regarded as a proximate cause of the injury.

Where the injured party continues on toward the position of peril or zone of danger and is apparently about to enter it, each advance that he makes before actually entering it is a new act of negligence which, if it concurs with the negligence of another to produce the injury, must be regarded as a proximate cause; but, once in the zone of danger, the mere fact that he unconsciously or heedlessly advances further into it without increasing the danger to himself, will not be held to be a proximate cause of his injury unless some new act on his part intervenes which helps to produce the conditions under which the injury is received.

In the present case, a reach wagon heavily laden with lumber and driven by the plaintiff R was struck by the defendant's train after its rear end had almost cleared a grade-crossing which met the tracks at an angle of forty-five degrees. Before driving on to the tracks R had looked for approaching trains, but from that time until the collision, the horses having traveled meanwhile upward of one hundred feet, he devoted his entire attention to getting his team safely across the rough planking of the crossing, and made no further observations, although he had an unobstructed view of thirteen hundred feet. From his side of the cab, the defendant's fireman had a similar view, and, if warned, the engineer

could have stopped the train within a distance of seven hundred to nine hundred feet, but the fireman did not observe the wagon nor give any warning until the train was within three hundred feet of the crossing. *Held:*

1. That the trial court properly instructed the jury that the last-clear-chance doctrine was applicable to the case; and that it had not, as claimed by the defendant, overemphasized this issue in its charge.

2. That the trial court did not err in denying the defendant's motion to set aside the verdicts for the plaintiffs.

Argued January 7th—decided February 23d, 1926.

ACTIONS to recover damages for injuries to person and property alleged to have been caused by the negligence of the defendant, brought to the Superior Court in Hartford County and tried together to the jury before *Brown, J.;* verdict for the plaintiff in each case, and appeals by the defendant. *No error.*

*James W. Carpenter,* for the appellant (defendant).

*William H. Fogarty,* for the appellees (plaintiffs).

WHEELER, C. J.   Richard seeks to recover from the defendant for the injury done to him, and Whitaker and Bacon seek to recover for the destruction of the horses and wagon and the damage done the harnesses, resulting from the engine of defendant having, at the Van Dyke grade-crossing in the city of Hartford, run against the rear of a load of lumber upon a reach wagon drawn by a team of horses belonging to Whitaker and Bacon and driven by Richard.

The controverted issues in the case were as to the negligence of the defendant, the contributory negligence of Richard, and the application of the last-clear-chance doctrine to the facts in evidence.  The appeal is from the denial of a motion of defendant to set aside verdicts in favor of the plaintiffs and for errors in the charge.  The defendant contends that the trial court

erred in refusing to grant its motion to set aside the verdicts for the reason that the plaintiffs failed to establish by the weight of the evidence the negligence, as alleged, of the defendant, and also failed to establish by the great weight of the evidence the plaintiffs' freedom from contributory negligence. The grounds of error are manifestly not well taken. A verdict which is against the preponderance of the evidence, or against the weight, or even the great weight, of the evidence, or reaches a conclusion which the court upon an examination of the evidence would not have reached, will not be set aside upon either of these grounds. *Hewitt* v. *Wheeler,* 23 Conn. 283, 302; *Hill* v. *Bennett,* 23 Conn. 362, 365; *Palmer* v. *Hyde,* 4 Conn. 426; *Daley* v. *Norwich & W. R. Co.,* 26 Conn. 590, 593; *Housatonic Railroad Co.* v. *Knowles,* 30 Conn. 313, 314. Similarly, the verdict will not be set aside where the evidence is conflicting, unless its manifest injustice is "so plain and palpable as to justify the suspicion that the jury or some of its members were influenced by prejudices, corruption or partiality." *Roma* v. *Thames River Specialties Co.,* 90 Conn. 18, 19, 96 Atl. 169; *Donovan* v. *Connecticut Co.,* 86 Conn. 82, 85, 84 Atl. 288. This is an application of the general rule that a verdict which, upon the evidence, the jury could not reasonably have reached, will be set aside. *Steinert* v. *Whitcomb,* 84 Conn. 262, 264, 79 Atl. 724; *Burr* v. *Harty,* 75 Conn. 127, 129, 52 Atl. 724; *Flynn* v. *West Hartford,* 98 Conn. 83, 86, 118 Atl. 517; *Bates* v. *Carroll,* 99 Conn. 677, 122 Atl. 562.

Another application of the rule is in the rare case where the physical facts resolve the apparent conflict in the evidence by showing that the testimony which created it is either unintentionally or intentionally untrue because in conflict with the indisputable physical facts. *Gianotta* v. *New York, N. H. & H. R. Co.,* 98

Conn. 743, 744, 120 Atl. 560. Not infrequently we say the verdict will not be set aside unless it is manifestly and palpably against the evidence, another form of saying that the verdict will not be set aside unless it be one which the jury could not reasonably have reached. The defendant's grounds of error, that the verdicts are against the weight of evidence and against the great weight of evidence, find no support in our law. Its further claim, that the facts in evidence bring the case within *Gianotta* v. *New York, N. H. & H. R. Co., supra,* finds no support in the evidence. The jury might reasonably have credited the evidence offered by the plaintiffs, and reasonably rendered their verdicts. We reach this conclusion without reliance upon our unquestioned rules that the decision of the trial court is entitled to great weight, and that every presumption supports the action of the trial court in its decision upon a motion to set aside a verdict.

The only assignments of error in the additional appeal which we need consider are those which concern the application of the last-clear-chance doctrine to the facts before the jury, the incorrectness and inadequacy of the charge upon this subject, and the over-emphasis placed upon it in the manner in which the court submitted it to the jury. Consideration of whether this doctrine was applicable requires that we have before us the essential facts which the plaintiffs offered evidence to prove, and which the jury might reasonably have found, and they are these: On March 3d, 1924, Richard was driving a reach wagon, heavily loaded with three thousand feet of lumber, parallel to the defendant's main tracks for about two hundred and fifty feet, at a speed of about three miles an hour, until he came to within twenty-five feet of the Van Dyke highway crossing—the highway at this point being a dirt road frozen and rough—when he stopped his

team, got off the wagon, tightened a chain around his load, looked and listened for a train, and then mounted the load and continued to look in both directions for a train, until his horses reached the tracks, and neither seeing nor hearing a train he drove upon the tracks and thereafter did not look for a train, but gave his attention to his team. As the planking of the crossing was rough he had to slow down and watch for holes lest he lose his load or his horses stumble and injure themselves, and due to the noise of his wagon he did not hear the approaching train. The traveled way on which Richard was proceeding as it approached the tracks formed an angle of forty-five degrees with the latter at the crossing. Richard drove on across the sixty-five feet of this crossing at a speed of about one and one-half miles an hour. As he drove on, and while driving over this crossing, he had an unobstructed view of an approaching train for thirteen hundred feet, and at this time there was no train in sight. The fireman of defendant also had a like view of this team at this crossing, on and after the time when the engine was thirteen hundred feet distant from the crossing. Defendant's train was traveling at a speed of thirty-five to forty miles an hour. The fireman did not see the team on the track until the engine was within three hundred feet of the crossing, and then gave warning to the engineer, and at that point, for the first time, the emergency whistle was given. The rear of the load had almost cleared the crossing when it was struck by the outside corner of the left steam chest of this engine. From the point where Richard drove into the zone of danger to the point the horses had ·reached when the collision occurred was upward of one hundred feet. From the point thirteen hundred feet from the crossing to it, the fireman should have known that this team would be hit by the engine unless the train either

stopped or immediately slackened its speed before reaching the crossing, and the fireman should also have known that Richard was oblivious of his danger and was unable to escape from it. The defendant could have stopped its train within a distance of seven hundred to nine hundred feet at any point within thirteen hundred feet before reaching the crossing. The engineer upon his side of the cab could not have seen this wagon in time to have avoided the collision; the fireman, whose duty it was to keep a lookout at this point, could have seen this team in time to have given the engineer warning and to have avoided the collision. The facts in evidence presented a situation from which the jury might reasonably have found the four conditions to co-exist upon which the so-called last-clear-chance or supervening negligence rule rests, to wit: "(1) that the injured party has already come into a position of peril; (2) that the injuring party then or thereafter becomes, or in the exercise of ordinary prudence ought to have become, aware not only of that fact but also that the party in peril either reasonably cannot escape from it or apparently will not avail himself of opportunities open to him for doing so; (3) that the injuring party subsequently has the opportunity by the exercise of reasonable care to save the other from harm; and (4) that he fails to exercise such care." *Fine* v. *Connecticut Co.*, 92 Conn. 626, 631, 103 Atl. 901; *Rooney* v. *Levinson*, 95 Conn. 466, 468, 111 Atl. 794; *Hygienic Ice Co.* v. *Connecticut Co.*, 90 Conn. 21, 23, 96 Atl. 152; *Petrillo* v. *Connecticut Co.*, 92 Conn. 235, 236, 102 Atl. 607; *Nehring* v. *Connecticut Co.*, 86 Conn. 109, 120, 84 Atl. 301, 524. As the court finally left the case with the jury, it had correctly and fully instructed them upon this point.

The defendant further claims that the case does not fall within the last-clear-chance doctrine, since the

plaintiff "continued as an active agent in causing the accident until it was too late for the defendant to avoid it." "Every second," defendant urges, "of his prolonged stay in the danger zone via his diagonal course, he reduced the possibility of escape and by his conduct increased the danger." If the defendant's counsel is correct in this position, the last-clear-chance doctrine would have application to no situation where the injured person is moving while within the zone of danger. This is a mistaken conception of our holding in the *Nehring* case, *supra.* What we there held was that where the injured person placed himself in a dangerous situation, and continued therein through a failure to awake to his surroundings, the continuance of the injured person in his dangerous surroundings cannot be regarded as the proximate cause of his injury, while his want of care in entering the zone of danger will be regarded as a remote and not a proximate cause. Where, however, the injured person, before entering the zone of danger, although apparently about to enter it, continues on toward it, each advance that he makes is a new act of negligence on his part, and if injury results through his own negligence and that of another there can be no recovery, for each must be regarded as a proximate contributor to the injury resulting from their concurrent negligence. Whether the injured person after entering the zone of danger were asleep, or unconscious, or heedless of his surroundings and pushed on further into the zone of danger, although not increasing his danger, the passive conduct of the injured person while within the zone, or his active conduct while within the zone in penetrating further into it —no new act of his after entering the zone of danger intervening helping to produce the conditions under which the injury was received—cannot be held to be an act of negligence on his part and a proximate cause

of his subsequent injury. Applying this doctrine to the facts in this case. After Richard entered the zone of danger, that is, after driving his team so close to the track as to be in danger of a collision with an engine, he continued on heedless of the approaching train, his penetration into the zone of danger was not a new act of negligence on his part and his conduct was not a contributing cause of his injury after the defendant saw or ought to have seen him in the zone of danger, and that apparently he was heedless of his danger and either could not escape from his peril or would not avail himself of his opportunity to escape.

The fact that the trial court instructed the jury several times upon the subject of the last clear chance, having twice called them from their deliberations upon the case for this purpose, we do not consider emphasized this subject so as to give it undue importance in the case, as the defendant insists. The last two instructions were responsive to the jury's question. The issue was an important one in the case, and the trial court sought to present it in such a way, that the jury could not misunderstand the instruction, and we think it succeeded.

The other grounds of appeal are either not pursued, or are not well taken.

There is no error.

In this opinion the other judges concurred.